563 F.2d 1369
 16 Fair Empl.Prac.Cas. 130, 15 Empl. Prac.
Dec. P 7953
Adiba MAHROOM, Appellant,
v.
Colonel John HOOK, Commandant, Defense Language Institute,
West Coast Branch, an agency of the U. S.
Government, and Howard B. Calloway,
Secretary of the United States
Army, Appellees.
 No. 75-2885.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 4, 1977.
 
 Susan J. Davis, Seaside, Cal., argued for appellant.
 John F. Cooney, Jr., Asst. U. S. Atty., San Francisco, Cal., argued for appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before CARTER, WATERMAN,* and ANDERSON, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 Appellant, Adiba Mahroom, an applicant for federal employment, brought suit against the commandant of the Defense Language Institute (DLI) at Monterey, California, and the Secretary of the Army, principally under Title VII of the Equal Employment Opportunity Act of 1972 (42 U.S.C. § 2000e-16(c)), for employment discrimination upon the basis of sex and national origin.[1] In her complaint, she demanded a declaratory judgment, injunctive relief concerning such alleged discrimination, damages (including lost wages), cost of suit, and attorneys' fees. After providing counsel an opportunity to be heard, the district court denied appellant's motion for leave to amend her complaint and granted appellees' motion for summary judgment, dismissing the action. We affirm the denial of the motion for leave to amend, but we reverse and remand the grant of summary judgment.
 
 BACKGROUND
 The 1971 Complaint
 
 2
 Mahroom, a female naturalized citizen of Iraqi descent, has twice been employed at the DLI in temporary positions as a training instructor in Arabic. She has received advanced degrees in education and was considered to be a good teacher by her supervisor at DLI.
 
 
 3
 In 1971, the DLI announced that teaching positions were open in the Arabic Department, and instructors were to be selected from highly-qualified applicants with Egyptian, Syrian or Iraqi background, in that order.[2] Mahroom applied for one of the positions; however, she did not obtain an interview or a position. As she failed to obtain employment, she filed a formal complaint on October 28, 1971, alleging discrimination based upon sex and national origin.
 
 
 4
 After an unsuccessful attempt at an informal resolution of her grievance, the complaint was forwarded to the U. S. Army Civilian Appellate Review Office. An investigator was assigned to undertake a detailed investigation of the facts. After carefully exploring the matter, the inspector reported that student demand justified establishment of selection preferences for persons proficient in the Egyptian and Syrian dialects, and recommended, therefore, a finding of no discrimination. On December 29, 1971, the recommendation was approved by the Civilian Personnel Office.
 
 
 5
 Subsequently, Mahroom requested a hearing before an Appeals Examiner assigned to the agency by the Civil Service Commission (CSC), and a hearing was conducted on March 14-15, 1972. On June 7, 1972, the Appeals Examiner issued his report, concluding that appellant had not been the victim of discrimination.
 
 
 6
 On October 27, 1972, the Army's Director of Equal Employment Opportunity (EEO) accepted the finding of no discrimination. This, the final decision, was appealed to CSC's Board of Appeals and Review (BAR). On March 22, 1973, the BAR affirmed the agency decision. However, the BAR did not send Mahroom a "Right-to-Sue" letter.[3]
 
 
 7
 Appellant thereafter sought help from the ACLU and from the San Francisco Lawyer's Committee for Urban Affairs.[4] The ACLU advised her that she had 90 days after the BAR's decision was issued in which to bring a civil suit, while the Lawyer's Committee informed her that the time for court action expired 30 days after the final decision. Upon receiving this information, appellant wrote to the BAR, asking why she was not advised of her right to sue. On July 5, 1973, the CSC wrote back to her, stating that under its interpretation the Equal Employment Opportunity Act of 1972 (which included 42 U.S.C. § 2000e-16) was not retroactive and that, therefore, she had no right to notification.[5]
 
 
 8
 Appellant went on to request reconsideration of the final agency decision.[6] Reasoning that she had not established a proper basis on which to reopen the prior decision, the BAR rejected the request on November 7, 1973.
 
 The 1973 Complaint
 
 9
 Another teaching position in the Arabic Department at DLI opened up in early 1973. Again, appellant applied for the position and was not selected. As a result, a second complaint, alleging discrimination based on sex and national origin, was filed on July 27, 1973.
 
 
 10
 On August 6, 1973, the EEO officer for DLI rejected the complaint in accordance with 5 C.F.R. § 713.215[7] for the reason that it set forth identical matters contained in the previous complaint. This decision was appealed, and on November 19, 1973, the BAR affirmed.
 
 
 11
 This time appellant was given her "Right-to-Sue" letter. In this letter of final action the BAR stated:
 
 
 12
 "Civil Service Commission Regulations provide that the Board's decision is final and that there is no further right of administrative appeal. However, if the complainant is not satisfied with the decision, she is authorized by section 717(c) of the Civil Rights Act of 1964 as amended on March 24, 1972 to file a civil action in an appropriate U. S. District Court within thirty (30) calendar days of her receipt of this decision." (Exhibit 1, p. 4)
 
 
 13
 Mahroom received notice of this final action on November 21, 1973. Within the requisite thirty days, she instituted this action in the district court, filing her complaint on December 20, 1973. On April 24, 1975, the appellees moved to dismiss or, alternatively, for summary judgment. As she substituted counsel on May 29, 1975, the scheduled hearing on the motion was postponed. On June 23, 1975, she filed a memorandum in opposition to appellees' motion and a motion for leave to amend the complaint by adding a cause of action based on the 1971 administrative complaint.
 
 
 14
 On August 1, 1975, both motions were heard. The motion to amend was denied, and the motion for summary judgment was granted. It is from these decisions that this appeal follows.
 
 I.
 The Motion for Leave to Amend
 
 15
 As discussed above, when the Civil Service Commission's Board of Appeals and Review finally denied Mahroom's claim of discrimination, they did not provide her with her statutory notice of right to sue or what is commonly referred to as the "Right-to-Sue" letter.
 
 
 16
 Mahroom's claim began in 1971. The effective date of the Equal Employment Opportunity Act (42 U.S.C. § 2000e, et seq.) is March 24, 1972. Her claim was therefore pending administratively on the effective date of the Act.
 
 
 17
 Because the Commission interpreted the Act as not retroactive to her 1971 claim, they held that she had no right to notification of her right to bring suit in federal court.
 
 
 18
 Our first inquiry is to decide whether the Equal Employment Opportunity Act is retroactive to cases which are pending administratively at the time of the effective date of the Act. Or, in other words, was Mahroom entitled to notice of her right to sue once the administrative agency's decision to deny her complaint was final?
 
 
 19
 In Koger v. Ball, 497 F.2d 702 (4th Cir. 1974), that court held:
 
 
 20
 "We conclude that Congress, being fully aware of the general rule favoring retrospective application of procedural statutes, intended by enacting § 717(c) (42 U.S.C. § 2000e-16(c)) to grant employees consent to sue for redress of pending cases of pre-Act discrimination." (497 F.2d at 708-709)
 
 
 21
 And, in Womack v. Lynn, 164 U.S.App.D.C. 198, 504 F.2d 267 (1974) (which adopted the reasoning of the Koger opinion, supra ), the court held:
 
 
 22
 "Section 717(c) is merely a procedural statute that affects the remedies available to federal employees suffering from employment discrimination. Their right to be free of such discrimination has been assured for years. We hold that this remedial statute applies retroactively to proceedings already pending at the time of its effective date, March 24, 1972." (504 F.2d at 269) (emphasis in original).
 
 
 23
 Womack was followed in Grubbs v. Butz, 169 U.S.App.D.C. 82, 514 F.2d 1323 (1975). Other cases which follow this reasoning are: Weahkee v. Powell, 532 F.2d 727 (10th Cir. 1976); Huntley v. Dept. of H.E.W., 550 F.2d 290 (5th Cir. 1977); Eastland v. Tennessee Valley Authority, 553 F.2d 364, 369 (5th Cir. 1977); and Brown v. General Services Administration, 507 F.2d 1300 (2nd Cir. 1974), aff'd, 425 U.S. 820, 824 n. 4, 96 S.Ct. 1961, 48 L.Ed.2d 402. (The Supreme Court observing that it had "no occasion to disturb" the Second Circuit's decision on retroactivity). See also Bunch v. United States, 548 F.2d 336 (9th Cir. 1977) and Davis v. Valley Dist. Co., 522 F.2d 827 (9th Cir. 1975), cert. den., 429 U.S. 1090, 97 S.Ct. 1099, 51 L.Ed.2d 535 (1977).
 
 
 24
 Following this line of authority we hold that the Equal Employment Opportunity Act is retroactive to embrace claims administratively pending on its effective date and is therefore applicable to Mahroom's 1971 action. Under the Act, 42 U.S.C. § 2000e-12 gives the Commission the authority to issue suitable procedural regulations to carry out the provisions of the Act. In exercise of this authority, the Commission promulgated, among others, 5 C.F.R. § 713.234 and § 713.282.
 
 
 25
 5 C.F.R. § 713.234, at the time in question,[8] provided in pertinent part:
 
 
 26
 "The Board of Appeals and Review shall review the complaint file and all relevant written representations made to the board. . . . The board shall issue a written decision setting forth its reasons for the decision and shall send copies thereof to the complainant, his designated representative, and the agency. . . . The decision of the board is final, but shall contain a notice of the right to file a civil action in accordance with § 713.282." (emphasis added)5 C.F.R. § 713.282 in pertinent part provides:
 
 
 27
 "The Commission shall notify an employee or applicant of his right to file a civil action, and of the 30-day time limit for filing, in any decision under § 713.234."
 
 
 28
 The thirty-day time limit referred to in these regulations is set out by Congress in section 717(c) of the Act (42 U.S.C. § 2000e-16(c)) which provides that "(w)ithin thirty days of receipt of notice of final action . . .. an employee or applicant for employment if aggrieved by the final disposition of his complaint, . . . may file a civil action as provided in section 706" (42 U.S.C. § 2000e-5).
 
 
 29
 Therefore, under this statute, as interpreted by the agency designated to interpret and enforce it, notice must be given to the employee or applicant that he has the right to bring an action in federal court and that he has thirty days in which to act.
 
 
 30
 This thirty-day time period is jurisdictional. If an aggrieved party does not file his suit within that time limit, the federal courts have no power to entertain the suit. Cleveland v. Douglas Aircraft Co., 509 F.2d 1027, 1029 (9th Cir. 1975); Wong v. Bon Marche, 508 F.2d 1249 (9th Cir. 1975). See also, Brown v. General Services Administration, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).
 
 
 31
 The question which arises once it has been determined that notice is required is when does the thirty-day period begin to run. In Gates v. Georgia-Pacific Corporation 492 F.2d 292, 295 (9th Cir. 1974), we held that "the 30 day period within which the civil action may be brought commenced when the January 23, 1969, formal notice was received." (emphasis added) We limited Gates to its facts and left open the specific question of what form of notice would trigger the thirty-day period in other circumstances.
 
 
 32
 The appellee contends that the thirty-day period began to run as soon as Mahroom received notice of the BAR's final decision, regardless of whether or not she received any "Right-to-Sue" letter. We disagree and hold that the thirty-day time limit does not begin to run until the aggrieved party has received actual formal notification of his statutory right to sue in federal court. By this we mean receipt of the so-called "Right-to-Sue" letter.
 
 
 33
 In holding this way, we follow such authority as Coles v. Penny, 174 U.S.App.D.C. 277, 531 F.2d 609 (1976), where the District of Columbia Circuit held that:
 
 
 34
 " . . . the thirty-day period within which a civil action may be filed did not begin to run until July 18, 1973 the first time at which appellant was notified (by way of a "Right-to-Sue" letter) that he had a right to bring a civil action within thirty days." (531 F.2d at 617)
 
 
 35
 And, in Garner v. E. I. DuPont DeNemours & Co., 538 F.2d 611 (4th Cir. 1976), that court also stated:
 
 
 36
 "In conclusion, we hold that, for reasons substantially similar to those given by Judge McGowan in Coles, it was within the regulatory power of the EEOC in interpreting § 706(f)(1) of Title VII to treat only a formal 'right to sue' letter from the EEOC as constituting the requisite statutory 'notice' which started the permissible period for initiating a federal court case under Title VII." (538 F.2d at 615)Other cases which support this result are: Lacy v. Chrysler Corp., 533 F.2d 353, en banc, (8th Cir. 1976), cert. den., 429 U.S. 959, 97 S.Ct. 381, 50 L.Ed.2d 325; Tuft v. McDonnell Douglas, 517 F.2d 1301 (8th Cir. 1975), cert. den., 423 U.S. 1052, 96 S.Ct. 782, 46 L.Ed.2d 641 (1976); Williams v. Southern U. Gas Co., 529 F.2d 483 (10th Cir. 1976), cert. den., 429 U.S. 959, 97 S.Ct. 381, 50 L.Ed.2d 325 and Page v. U. S. Industries, 556 F.2d 346 (5th Cir. 1977). See also, Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (where the Supreme Court noted that one of the jurisdictional prerequisites to Title VII suits was that the claimant receive and act upon the Commissioner's statutory notice of the right to sue).
 
 
 37
 As we mentioned above, Mahroom did not receive any "Right-to-Sue" letter. What she did receive was a letter from the BAR which denied her claim of employment discrimination and stated that "Civil Service Regulations provide that the decision of the Board is final and that there is no further right of administrative appeal." (Exhibit 1 at 104)
 
 
 38
 The Equal Employment Opportunity Act is a remedial statute to be liberally construed in favor of the victims of discrimination. Davis v. Valley Dist. Co., 522 F.2d 827, 832 (9th Cir. 1974); EEOC v. Wah Chang Albany Corp., 499 F.2d 187, 189 (9th Cir. 1974). Accordingly, "courts confronted with procedural ambiguities in the statutory framework have, with virtual unanimity resolved them in favor of the complaining party." Davis v. Valley Dist. Co., supra, quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 461 (5th Cir. 1970). The broad structure and purpose of Title VII, as established by Congress, relies upon laymen, operating without legal assistance, to initiate both administrative complaints and lawsuits. Congress did not intend that such laymen, not schooled in the finer points of legal procedure, be presumed to know exactly what procedural step they must next take in order to perfect their claims, especially when they have been conclusively told that they have no further rights or remedies. By holding that Mahroom must be specifically informed in the "Right-to-Sue" letter that she has a right to sue and how much time she has in which to bring the suit, we give effect to the intent and purpose of Congress in enacting Title VII.
 
 
 39
 In this case, Mahroom was a layman and operated without legal assistance for her 1971 claim. Because the BAR wrote and told her that their decision was final, it is not reasonable or within the policy of Title VII to hold that she should have known that she had only thirty days to institute suit from that time. The reasoning for this was persuasively stated in Coles v. Penny, supra, in a factual situation strikingly similar to the facts of this case. In Coles the court reasoned:
 
 
 40
 "Thirty days is not a long period in which to expect a pro se complainant to become aware of and exercise his statutory right to sue. Consider the situation in which the appellant found himself in this case. After two years of administrative consideration, his claim was denied by the Board of Appeals and Review. The notice he received that 'Civil Service Regulations provide that a decision of the Board is final and that there is no further right to administrative appeal' had a definite ring of finality to it. A trained lawyer might realize that judicial review commences when administrative appeals end, but we do not believe that such a realization is likely to spring forth full blown in the mind of a layman; the notice actually received may rather have stifled any inclination appellant might have had to pursue the matter any further. It may be more than coincidental that appellant filed a timely action regarding his 1972 complaint, as to which he received notice of his right to sue, whereas his failure to bring an action regarding his 1970 complaint followed a less informative and possibly misleading notice." (531 F.2d at 615) (emphasis in original)Since Mahroom has never received a "Right-to-Sue" letter on her 1971 action, our next inquiry is whether her right to bring suit can continue indefinitely until the "Right-to-Sue" letter is received. More specifically, the question is whether Mahroom should have been able in 1975, to amend her complaint (filed on her 1973 discrimination action) to include her 1971 action. The situation is this. In 1971 she complained of discrimination. Her claim was denied. She was told the decision was final, but was not told she could sue. She did not sue. In 1973 she again complained of discrimination. Her claim was again denied. She was told the decision was final. However, this time she was told that under the statutes she did have a right to sue within thirty days.
 
 
 41
 Under the facts of this case, we find that the thirty-day time limit to file a federal suit on both her 1971 and 1973 claims began to run when she in fact received the "Right-to-Sue" letter on November 21, 1973, in regard to her 1973 action.
 
 
 42
 We find that if Mahroom would have brought suit on her 1971 action (or alternatively, amended her 1973 complaint to include her 1971 action), within the thirty days following receipt of her "Right-to-Sue" letter on November 21, 1973, the action would have been timely. This is the precise result that the Fourth Circuit arrived at in Coles v. Penny, supra, under that nearly identical factual situation. In that case, the appellant Melvin Coles had filed a 1970 discrimination claim. It was denied and "finalized" much the same as Mahroom's claim was. He also was given no notice of right to sue. In 1972 he filed another discrimination claim. This claim was also denied, but he was given the statutory notice of his right to sue. Within thirty days of this "Right-to-Sue" letter he filed a suit on his 1970 claim, as well as a new 1972 claim. The district court found the 1970 claim untimely and granted summary judgment against Coles. The Fourth Circuit reversed and remanded, holding (as quoted, supra) that the thirty-day time limit did not begin to run on the 1970 claim until receipt of the "Right-to-Sue" letter, which involved his later 1972 claim.
 
 
 43
 Because of our holding that Mahroom's right to sue on the 1971 claim was only timely within thirty days of receipt of the November 21, 1973, "Right-to-Sue" letter, her motion to amend the complaint over one year and seven months later, was untimely. The district court properly denied that motion as it was without jurisdiction at that time to hear the 1971 claim. Cleveland v. Douglas Aircraft; Wong v. Bon Marche, and Brown v. General Services Administration, supra.
 
 II.
 The Motion for Summary Judgment
 
 44
 Under Chandler v. Roudebush, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), applicants for federal employment bringing suit under 42 U.S.C. § 2000e-16(c) have the same right to a trial de novo as is enjoyed by applicants for employment in the private sector under 42 U.S.C. § 2000e-5.
 
 
 45
 In their memorandum for support of the motion for summary judgment, appellees contended that no trial de novo was required for suits brought under § 2000e-16. This position, of course, was directly rejected in Chandler. However, Chandler does not require a de novo hearing in every instance; if a complaint brought under 42 U.S.C. § 2000e-5 would be properly disposed of by summary judgment, then it is appropriate for a district court to handle similarly a complaint brought under 42 U.S.C. § 2000e-16.
 
 
 46
 Summary judgment is appropriate only when the movant has proven that there is no genuine issue of material fact. See Federal Rule of Civil Procedure 56(c). Since the motion for leave to amend was properly denied, the only controversy before the district court concerned the 1973 discrimination action. The 1973 action is allegedly barred under 5 C.F.R. § 713.215 for setting forth "identical allegations" as in the 1971 action. It is true that the 1971 and 1973 complaints do set forth the same claims of discrimination, i. e., discrimination on the basis of sex and her Iraqi national origin. Appellees countered these claims by responding each time that priority was given to applicants proficient in the Arabic-Egyptian dialect and that Mahroom was not the victim of any discrimination.
 
 
 47
 While the complaints do state similar actions, we feel that the 1973 complaint did state a cause of action new and separate from the 1971 complaint because in 1973 she was competing against a different set of applicants with potentially different qualifications than she competed against in 1971. Other facts may also be different. Her not being selected from the 1973 applicants has not yet been considered in the administrative process. We feel that it is totally inappropriate to forever bar an applicant for federal employment from either administrative or judicial consideration of a discrimination charge simply because that individual had claimed similar acts of discrimination at an earlier time and had not prevailed. Mahroom's 1973 action was not "identical" to her 1971 action. We do not believe that 5 C.F.R. § 713.215 was intended to prevent the hearing of discrimination complaints on new causes of action.
 
 
 48
 Therefore, the stated grounds for the dismissal of her complaint by the CSC were erroneous. The district court, in turn, was in error when it granted summary judgment. The factual allegations raised by appellant had never been heard and such a hearing is required by Chandler v. Roudebush, supra.
 
 
 49
 Therefore, we reverse and remand for a trial de novo in accordance with the Supreme Court's decision in Chandler. We, of course, do not preclude further summary judgment motions, if appropriate. We express no opinion regarding the merits of Mahroom's allegations.
 
 
 50
 The reply brief of appellant has not been considered. No good cause has been shown for the late filing and the motion to strike the reply brief is GRANTED.
 
 
 51
 AFFIRMED IN PART. REVERSED AND REMANDED IN PART.
 
 
 
 *
 The Honorable Sterry R. Waterman, Senior Circuit Judge, United States Court of Appeals, Second Circuit, sitting by designation
 
 
 [1]
 Appellant also brought suit under 28 U.S.C. § 1343. However, the Supreme Court has made clear that 42 U.S.C. § 2000e-16 provides the exclusive judicial remedy for claims of discrimination in federal employment. Brown v. GSA, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). See also, Eastland v. Tennessee Valley Authority, 553 F.2d 364, 371 (5th Cir. 1977)
 
 
 [2]
 The Arabic language contains numerous different dialects. In each Arabic language class at DLI, a specialization in one of these dialects is taught. Appellant is trained solely in the Arabic-Iraqi dialect; however, preference in the selection process was to go to those trained in the Arabic-Egyptian dialect. The stated reasons for this preference were simply that there were more students interested in that dialect and that there was a sufficient supply of instructors trained in the Iraqi dialect to handle the demand
 
 
 [3]
 A "Right-to-Sue" letter informs an employee or applicant of his right to file a civil action and of the 30-day time limit for filing
 
 
 [4]
 It should be noted that appellant was not represented by counsel during the course of this first administrative appeal
 
 
 [5]
 In its letter to appellant the BAR stated:
 "It is our interpretation that notification of the right to file a civil action under the provisions of the Equal Employment Opportunity Act of 1972 arises only when the alleged act or acts of discrimination occurred on or after March 24, 1972, the date the Act became effective. Because your complaint was filed on October 28, 1971, notice of a right to file a civil action was not included in the Board's decision in your case." (Exhibit 1 at 87)
 
 
 [6]
 Letters to this effect were sent to the BAR on July 25, 1973, October 19, 1973, and October 30, 1973
 
 
 [7]
 5 C.F.R. § 713.215 provides, in part:
 "The head of an agency or his designee may reject a complaint which was not timely filed and shall reject those allegations in a complaint which are not within the purview of § 713.212 or which set forth identical matters as contained in a previous complaint filed by the same complainant which is pending in the agency or has been decided by the agency." (emphasis added)
 
 
 [8]
 5 C.F.R. § 713.234 was amended slightly on September 9, 1974, and changed the name of the Board of Appeals and Review to the Appeals Review Board. In other respects the regulation is identical to the 1972 version