[Civ. No. 59740. Second Dist., Div. One. Feb. 27, 1981.]

FAIR EMPLOYMENT PRACTICE COMMISSION et al.,
Plaintiffs and Appellants, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
LEWIS D. TODD, Real Party in Interest and Respondent.

Counsel

David A. Garcia A., Marjorie E. Cox and Theresa L. Thomas for Plaintiffs and Appellants.

Russell Iungerich for Defendant and Respondent.

Bernard L. Allamano and John D. Mickus for Real Party in Interest and Respondent.

---

Opinion

**SPENCER, P. J.—**

### Introduction

Appellants Fair Employment Practice Commission and Division of Fair Employment Practices appeal from the denial of a peremptory writ of mandate in which appellants sought to vacate respondent State Personnel Board's order that the real party in interest, Lewis D. Todd, be promoted retroactively to July 1, 1975, on the ground that appellants' refusal to promote Todd was discriminatory in nature.

### Statement of Facts

Lewis D. Todd (Todd) has been employed by the Division of Fair Employment Practices (Division) as a consultant, essentially an investigatory position, since 1970. In 1972, Todd was one of four minority consultants who filed a group grievance with respect to Division's promotion policies. Beginning approximately two weeks thereafter, Todd observed a change in attitude on the part of his superiors. Prior to signing the grievance, Todd had been given many assignments which entailed decision-making and diplomatic skills and had frequent contacts with the public which involved public speaking and public relations skills. Charles E. Wilson, acting chief of the Division during this period, testified that it was Division policy to give promising employees "career enhancing assignments." After signing the grievance, Todd's contacts with the general public were largely eliminated, while prior case assignments were removed and replaced with assignments which involved travelling considerable distances.

Erwin Feiertag (Feiertag), who became area administrator early in 1973, unequivocally stated that Todd had no future in the Division because he had filed the grievance and Paul. Meany (Meany), assistant chief of the commission, told Todd that "he had killed himself with the agency." Meany denied making such a statement, but acknowledged that the commission was not happy with the grievance and that Todd possibly "hurt himself" by signing the grievance.

Relations between the agency administration and those filing the grievance remained tense. For a period of time in 1974 and 1975, Todd frequently was assigned to develop staff suboffices. However, once the offices were established, he was routinely replaced with individuals whom he had trained. Dumas Robinson testified that Feiertag did not wish to have Todd as a consultant on his staff and that "every consultant that he [Feiertag] didn't want or felt was incompetent was black." Feiertag's secretary testified that during the first half of 1975, she heard Feiertag state with respect to Dumas Robinson that "I'm going to stay until I see that black bastard hung."

In January 1973, Todd undertook a promotion examination for the position of senior consultant, placing seventh on the resulting civil service promotion list which became effective on April 27, 1973. Todd learned of a vacancy for a senior consultant in the commission's San Diego office in December 1974. At that time, Todd had advanced to the second rank on the civil service promotion list, but ranked first in southern California. He informed Feiertag of his interest in the position, and in addition wrote a letter on January 9, 1975, to Roger Taylor, chief of the Division, expressing his interest and setting forth his qualifications. Traditionally, as the first-ranked candidate in southern California, Todd could expect priority consideration and probable appointment to the vacancy. However, in January 1975, the commission adopted a budgetary policy which resulted in a "freeze" on hiring and promotions for the remainder of the fiscal year. Although Todd frequently had been placed in charge of the southern area office for periods of as much as one or two weeks, he was not included in the group from which an acting senior consultant for the San Diego office was chosen.

There was some evidence that Todd's performance had become unsatisfactory by late 1974 in that a number of complaints were received as to Todd's treatment of clients. However, no corrective action was undertaken, Todd was not informed that his performance of his duties

was generating too many complaints, and he was nonetheless given a good performance rating.

On May 31, 1975, a written examination was conducted to establish a new senior consultant promotion list. Thereafter, in June 1975, Todd and other minority applicants filed a grievance alleging a discriminatory purpose behind establishing a new promotion list in that the extant list was heavily weighted with minority candidates. Although the senior consultant vacancy in the San Diego office had then been filled only on a temporary basis for several months, no appointment was made after a new fiscal year commenced on July 1, 1975.

On July 7, 1975, in response to the grievance filed by Todd and others, the Director of the Department of Industrial Relations informed the southern area manager of the California State Employees' Association of his belief that the interests of the Division and its staff would be best served by deferring promotions until a new Division chief was appointed and could make the selections. The July 7 letter indicates a clear expectation that such an appointment would be made in a short time and would enable the new chief to consider current eligible persons as well as those who would appear on a new promotion list in evaluating the basis for the grievance filed and in filling vacant positions.

On August 20, 1975, the Secretary of the Agriculture and Services Agency similarly communicated her understanding that the oral examinations for the new promotion list would be delayed and the positions would not be filled until the new Division chief had an opportunity to review all charges of discrimination. When it became apparent in September 1975 that a policy of holding promotions in abeyance until the appointment of a Division chief was impractical, oral examinations were ordered to allow compilation of a new senior consultant promotion list. At no time prior to October 28, 1975, was the April 27, 1973, promotion list cancelled.

CONTENTIONS

I

Appellants contend that respondent failed to make findings adequate to clearly disclose the basis for or to support the action taken.

## II

Appellants further aver that there is no substantial evidence to support either respondent's findings or the action taken.

For the reasons set forth below, we disagree with appellants' contentions and affirm the judgment

### DISCUSSION

### I

■ Appellants' initial contention that respondent's findings are insufficient to disclose clearly the basis for or to support the action taken lacks merit. ■ The findings of an administrative agency must be sufficient to enable the parties to a proceedings to determine whether and upon what basis they should seek review and to allow a reviewing court to determine the basis for the agency's action. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 514 [113 Cal.Rptr. 836, 522 P.2d 12].) However, great specificity is not required. It is enough if the findings form an adequate analytic bridge between the evidence and the agency's decision. (*Id.*, at p. 518; *Feather River Trailer Sales, Inc.* v. *Sillas* (1979) 96 Cal.App.3d 234, 243-244 [158 Cal.Rptr. 26].) In addition, findings are to be liberally construed to support rather than defeat the order under review. (*Sierra Club* v. *City of Hayward\** (Cal.App.); *Realty Projects, Inc.* v. *Smith* (1973) 32 Cal.App.3d 204, 213 [108 Cal.Rptr. 71].)

Findings V, VI and VII recite the following:

### "V

"Unlawful discrimination occurred in connection with the failure to appoint Mr. Todd to the vacant position of Senior Consultant in the San Diego office of the Commission.

### "VI

"As a result of the perceived discrimination, the grievances were filed by the minority employees involved in this proceeding.

---

*Reporter's Note: Hearing granted, for Supreme Court opinion see 28 Cal.3d 840 171 Cal.Rptr. 619, 623 P.2d 180].

"The filing of the grievances placed the grievants in an adversary position to their agency and produced adverse feelings by agency administrators in regard to them. In that regard, one of the grievants was advised by his supervisor that he had destroyed his chances within the agency. Another grievant who later joined the grievant group, was advised, at the time he was a new employee, that he should avoid the grievants and that he should not sign any petitions.

"VII

"The Senior Consultant in the San Diego office retired from the state service effective December 31, 1974. At that time the employee had unused accumulated leave which encumbered the position which was vacated until February 3, 1975. In January 1975, it was announced that the agency was required to save substantial sums during the remaining period of the 1974-1975 fiscal year. No vacancies were to be filled and no promotions were to be made until the close of the budget year without the approval of the Department of Industrial Relations.

"Upon learning that the vacancy existed, grievant Todd requested appointment to the then vacant position. He, at that time, was in a position on an eligibility list from which he could be lawfully certified and appointed. Mr. Todd's request was refused. The present incumbent is a black male appointed on December 8, 1975 from a new eligibility list superceding the one upon which Mr. Todd had achieved appointment eligibility. Mr. Todd's name appeared on but was not in a position to be certified from the new eligibility list.

"It was appropriate that Mr. Todd's appointment be withheld during the period of the remainder of the fiscal year ending June 30, 1975.

"The list upon which Mr. Todd appeared in a favorable position was effective April 27, 1973. The examination for the establishment of the succeeding list was conducted May 31, 1975 and the list was effective October 28, 1975.

"Had it not been for the unlawful discrimination and the adverse feelings created by action taken by Mr. Todd in joining the grievant group, it is reasonably probable that he would have been appointed to fill the vacancy which was available during the period between July 1, 1975 and October 28, 1975. During this period the list had not yet been superceded [*sic*]."

 Viewing the express language of these findings and drawing reasonable inferences therefrom, it is apparent that respondent sustained the hearing officer's decision to order retroactive promotion of Todd on the ground of a clearly discriminatory and retaliatory course of conduct which directly resulted in denying Todd a promotion which he otherwise reasonably would expect to receive. The findings alert the court to the type of evidence which should be reflected in the record. No more is required to bridge the analytic gap between the evidence and the order. Accordingly, appellants' assertion that the findings do not establish a prima facie case of discrimination must fail.

 Appellants fare no better with the claim that respondent erroneously failed to make findings from the evidence which established a legitimate business reason for the failure to promote Todd. In support of that premise, appellants point to two categories of evidence: That which suggested that Todd's performance had become unsatisfactory prior to 1975 and the letters of July 7, 1975, and August 20, 1975, which establish that the Division was barred from making any promotions at least until late September 1975.

The evidence with respect to Todd's unsatisfactory performance discloses only that complaints had been received as to Todd's handling of some clients and that his performance was viewed as unsatisfactory in some respects. From further evidence that no corrective action was taken, that Todd was not informed that his performance of his duties was generating too many complaints, and that Todd was nonetheless given a good performance rating, respondent reasonably could have concluded that the Division did not consider Todd's performance to be significantly below standard so as to affect his promotability.

As to the letters of July 7, 1975, and August 20, 1975, there is nothing in their language which compels the conclusion that the Division was absolutely barred from making a promotion to the position of senior consultant after July 7. The July 7 letter clearly contemplates the early appointment of a Division chief which will enable him to consider those persons currently eligible for promotion. In addition, it is the need for investigating the grievance, ideally before the senior consultant appointment was made, which prompted the Director of the Department of Industrial Relations to believe that the Division's best interests would be served by awaiting the appointment of a new chief. Finally, both letters are directed to the southern section manager of the California State Employees' Association in response to a request that the

grievance be investigated and resolved. There is no intimation that it was not in the power of the acting Division chief to make an appointment to the San Diego office should he consider it desirable or necessary to do so.

Appellants also suggest that the fact that evidence demonstrated that no promotions had, in the past, been made between the date of a qualifying examination and the effective date of a new promotion eligibility list establishes a legitimate business reason for not promoting Todd from a "stale" eligibility list. However, the fact that no promotions previously had been made during such an interim period does not prove that policy prevented such an appointment. ■ To the contrary, Government Code section 18901 expresses a policy that all persons on a current eligibility list shall be preferred for appointment until such time as the list automatically expires or all names are removed therefrom by State Personnel Board or Division action.[1] ■ Accordingly, upon consideration of all of the foregoing evidence, respondent reasonably could have concluded that there was in fact no sufficient business reason for denying Todd a promotion. As an assertion of a legitimate business reason goes to the rebuttal of a prima facie case of discrimination, respondent was not required to make a finding that no legitimate business reason existed. Thus the findings are adequate to support the action taken.

## II

■ Appellants further aver that there is no substantial evidence to support either respondent's findings or the action taken. We disagree.

■ Substantial evidence is that which is "of ponderable legal significance ... reasonable in nature, credible, and of solid value." (*People* v.

[1]Government Code section 18901 provides in pertinent part: "(a) The board may remove all names from open and promotional eligible lists after they have remained thereon for more than one year from the date of the adoption of the lists that created their eligibility, and shall remove all names from lists of eligibles not later than four years after the adoption of the lists that created their eligibility.
" . . . . . . . . . .
"(b) When a list of eligibles becomes exhausted for temporary or permanent employment before the legal expiration of the list, and a new list of eligibles for the same class is created by examination to supply the demands of the service, such new list shall become a part of the list of eligibles to be certified to the positions covered by the list. Those holding places on the prior list shall be given preference for appointment until such time as the prior list may automatically expire or all names are removed therefrom by action of the board ...."

*Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738]; quoting *Estate of Teed* (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54].) In assessing whether there is substantial evidence in support of a constitutionally created agency's findings, this court must draw all legitimate and reasonable inferences in support of the findings; it is not our function to reweigh the evidence. (*Blake* v. *State Personnel Board* (1972) 25 Cal.App.3d 541, 551 [102 Cal.Rptr. 50].)

The evidence establishes that Todd was aware of significant changes in assignments immediately after he became a party to a 1972 group grievance. His contacts with the general public diminished greatly and he was required to travel considerable distances in order to handle his caseload. Further, the attitude of his superiors changed significantly, two of them informing him that he had no future in the Division as a result of his participation in the grievance.

Relations between Todd and Division administrative personnel continued to be strained through the early part of 1975. Todd was denied the opportunity to head any of several suboffices, although he had been instrumental in establishing the offices. Feiertag apparently was unhappy with Todd's presence as a consultant on his staff.

The foregoing evidence is sufficient to support the inference that the Division came to view Todd as an undesirable "troublemaker," thereupon withdrew from him the "career enhancing" assignments he had been given formerly, and used this combination of circumstances, coupled with the 1975 grievance, as a pretext for withholding from Todd a promotion to senior consultant.

Further evidence establishes that Todd was ranked first on the promotion list for the southern California area and, accordingly, could reasonably expect promotion to senior consultant in the San Diego office. Assuming that respondent rejected appellants' evidence relative to a legitimate business reason for denying Todd the promotion, the above evidence as a whole is substantial enough to support the findings and the action taken. A showing that an employee engaged in protected activities, such as filing a grievance alleging discrimination,[2] and was denied promotion in the absence of a legitimate business reason therefor

[2]Labor Code section 1420, subdivision (e), provides: "It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

establishes retaliatory discrimination. (See, e.g., *Aguirre* v. *Chula Vista Sanitary Service* (9th Cir. 1976) 542 F.2d 779, 781; *Northern Inyo Hosp.* v. *Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14, 25 [112 Cal.Rptr. 872].) Certainly, in the instant case, the comments by Feiertag and Meany that Todd had ruined his future in the Division provide a direct causal link between the grievances and discriminatory treatment of Todd.

As noted in *Northern Inyo Hosp., ibid.*: "Discrimination is practiced in many subtle and elusive ways; rarely is there evidence of open and notorious discrimination." Thus even if respondent determined merely that the Division refrained from promoting Todd because it felt, after the 1975 grievance was filed, that to do so would be tantamount to an admission of prior discrimination, Todd was subjected to discriminatory treatment.

The presence of contrary evidence, which if believed, would support findings in favor of appellants does not reduce the substantiality of the foregoing evidence. (See *Boreta Enterprises, Inc.* v. *Department of Alcoholic Beverage Control* (1970) 2 Cal.3d 85, 94 [84 Cal.Rptr. 113, 465 P.2d 1].) ■ Unless the findings or the action taken by respondent are so lacking in evidentiary support as to render them unreasonable, we may not set aside respondent's action as an abuse of discretion. (*Northern Inyo Hosp.* v. *Fair Emp. Practice Com., supra,* 38 Cal.App.3d 14, 24.) Given the substantial evidentiary support in the instant record, we find no abuse of discretion.

The judgment is affirmed.

Hanson (Thaxton), J., and Hogan, J.,* concurred.

---

" . . . . . . . . . . . .

"(e) For any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this act or because he has filed a complaint, testified or assisted in any proceeding under this part."

*Assigned by the Chairperson of the Judicial Council.